IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIER REIT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-03831-M |
| v. | § | |
| | § | |
| UVEST FINANCIAL SERVICES GROUP | § | |
| INC., a/k/a and d/b/a UVEST FINANCIAL | § | |
| SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are UVEST's Motion to Dismiss [Docket Entry #21] and UVEST's

Motion to Strike [Docket Entry #19]. For the reasons stated below, UVEST's Motion to Dismiss

is **GRANTED IN PART** and **DENIED IN PART**, and UVEST's Motion to Strike is

**GRANTED**.

I.    **BACKGROUND**[1]

Plaintiff TIER REIT is a real estate investment trust ("REIT"), "an investment vehicle

that allows individual investors to purchase shares in a diverse portfolio of real estate, which is

managed by the REIT." Pl.'s First Am. Compl. ¶ 7 ("Compl.") [Docket Entry #15].[2] TIER

REIT is incorporated in Delaware with its principal place of business in Dallas County, Texas.

Defendant UVEST Financial Services Group Inc. ("UVEST") is a broker-dealer incorporated in

---

[1] In its recitation of the facts, the Court accepts all well-pleaded facts in the First Amended Complaint as true, and views them in the light most favorable to Plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[2] Prior to June 2013, TIER REIT was known as Behringer Harvard REIT I, Inc. Compl. 1 at n.1. The Court will refer to Plaintiff as TIER REIT.

1

North Carolina with its principal place of business in Charlotte, North Carolina.

Prior to July 2015, TIER REIT was a non-traded REIT.  As such, it was not listed on any public exchange markets; instead, its shares were available for purchase to investors through broker-dealers, "who could recommend investments in TIER REIT to their clients for purchase through submission of a subscription agreement to TIER REIT."  *Id.* ¶ 8.  Prior to marketing TIER REIT shares to clients, a broker-dealer was required to enter into an agreement, known as a Selected Dealer Agreement ("SDA") with TIER REIT's Dealer Manager, Behringer Securities LP (the "Dealer Manager").  In turn, the Dealer Manager would enter into a separate agreement with TIER REIT, known as a Dealer Manager Agreement ("DMA"), which authorized the Dealer Manager, as its agent and distributor, to sell its shares to broker-dealers.

UVEST entered into multiple SDAs with the Dealer Manager.  *Id.* ¶ 11.  Two of the SDAs are at issue in this lawsuit.

*The SDAs*

In February 2005 and October 2006, UVEST and the Dealer Manager entered into SDAs.  *See* Appendix to Complaint ("Pl.'s App.") at 309-25 (Exs. 1A and 1B).[3]  Among other things, the SDAs set out the terms under which UVEST (known as the "Dealer" in the SDA), could offer TIER REIT shares to the public and provided that the Dealer Manager would pay UVEST sales commissions.  *See id.*  The SDA incorporated by reference certain provisions of the DMA,

---

[3] TIER REIT has attached numerous exhibits to the Complaint, including copies of the parties' agreements cited in the Complaint.  *See* Pl.'s App. at 308-504 [Docket Entries #15-1 to #15-14]. In ruling on a motion to dismiss under Rule 12(b)(6), the Court generally cannot look beyond the pleadings.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  However, the pleadings include the Complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  Thus, in considering UVEST's motion to dismiss, the Court will consider the documents TIER REIT attaches to the Complaint as part of its pleadings.

entered into by the Dealer Manager and TIER REIT in February 2005 and October 2006, *id.* at

327-48 (Exs. 2A and 2B), including the following:

> Behringer Securities LP, as the dealer manager ("Dealer Manager") for [TIER REIT], invites you (the "Dealer") to participate in the distribution of shares of common stock ("Shares") of [TIER REIT] subject to the following terms:

> I.      Dealer Manager Agreement

> The Dealer Manager has entered into an agreement with [TIER REIT] called the Dealer Manager Agreement dated February __, 2005, in the form attached hereto as Exhibit A (the "Dealer Manager Agreement," *the terms of the Dealer Manager Agreement relating to the Dealer are incorporated herein by reference as if set forth verbatim* and capitalized terms not otherwise defined herein shall have the meanings given them in the Dealer Manager Agreement). By your acceptance of this Agreement, you will become one of the Dealers referred to in the Dealer Manager Agreement, *including the provisions of the Dealer Manager Agreement wherein the Dealers severally agree to indemnify and hold harmless the Company*, the Dealer Manager and each officer and director thereof . . .

*Id.* at 309, 318 (emphasis added).

> *The DMAs*

The terms of the DMA "relating to the Dealer," and incorporated by reference into the

SDA, provided, in relevant part, that:

> 4.3 Each Dealer severally will indemnify and hold harmless [TIER REIT] . . . from and against any losses, claims, damages or liabilities to which [it] . . . may become subject, under the Securities Act or otherwise, insofar as such losses, claims, damages, or liabilities (or actions in respect thereof) arise out of or are based upon (a) any untrue statement or alleged untrue statement of a material fact contained in (i) the Registration Statement (including the Prospectus as a part thereof) . . . or (ii) in any Blue Sky application . . . or (d) *any unauthorized use of sales materials or use of unauthorized verbal representations concerning the Shares by such Dealer or Dealer's representatives or agents in breach of Sections VII of the Selected Dealer Agreement* or otherwise. . . .

> \* \* \*

3

4.5 The indemnifying party shall pay all legal fees and expenses of the indemnified party in the defense of such claims or action. . . .

4.6 The indemnity agreements contained in this Section 4 shall remain operative and in full force and effect regardless of . . . (c) any termination of this Agreement.

*Id.* at 332-33, 343-44 (Exs. 2A and 2B) (emphasis added).

Section VII of the SDA, cited in Section 4.3 of the DMA, provided, among other things, that UVEST "is not authorized or permitted to give and will not give, any information or make any representation concerning the Shares except as set forth in the Prospectus and supplemental information." *Id.* at 311, 320.  Section VII also required UVEST to deliver a copy of the Prospectus and supplement to each investor to whom an offer was made prior to and simultaneously with the first solicitation of an offer to sell the shares to an investor.  *Id.*

*The Six Underlying Investor Lawsuits and Arbitrations*

Between 2012 and 2014, various investors who had purchased shares of TIER REIT from UVEST filed lawsuits in Louisiana state court against TIER REIT, UVEST, and Jose Vasquez, a UVEST dealer in Louisiana.  Compl. ¶ 19 and Pl.'s App. at 350-421 (Ex. 3) (the "Lawsuits").  In the Lawsuits, the plaintiffs alleged, among other things, that they purchased shares of TIER REIT based on false statements and material misrepresentations about the investment by Vasquez, who allegedly failed to inform them that the investments were high-risk and illiquid, and failed to show them a prospectus or any kind of written description of TIER REIT's offering. The plaintiffs also alleged that Vasquez overstated their assets and net worth to meet the suitability requirements for the investment, and invested their substantial funds in the illiquid and unsuitable TIER REIT investment, resulting in a loss of principal.  *Id.*  With regard to TIER REIT, the plaintiffs alleged, among other things, breach of fiduciary duty and state securities law

4

violations.  Certain claims against TIER REIT were dismissed after TIER REIT and the plaintiffs

in each case agreed to two consent judgments.  Compl. ¶ 22.  The Lawsuits were then stayed,

pending arbitration, where the claimants made the same allegations as they had in the Lawsuits.

*Id.* ¶ 29 and Pl.'s App. at 388-421 (Ex. 4) (the "Arbitrations").  Ultimately, the Arbitrations were

dismissed as to TIER REIT, and/or dismissed altogether, between May 5, 2015, and July 17,

2015.  *Id.* ¶ 52.

*Subscription Agreements*

In addition to the SDA, UVEST was required to execute and submit subscription

agreements to TIER REIT.  *Id.* ¶ 31 and Pl.'s App. at 423-67 (Ex. 5) ("Subscription

Agreements").  In Paragraph 7 of each  Subscription Agreement, UVEST represented, through

Vasquez and another employee with whom he worked, Nikki Fontenot, that it had provided the

investors with the prospectuses for the investment and had informed the investors of the liquidity

and marketability of the TIER REIT investment.  Pl.'s App. at 427, 432, 437, 442, 447, 452, 457,

462, 467.

*Requests for Indemnification*

On September 11, 2012, TIER REIT sent UVEST a request for indemnification in one of

the six Lawsuits (the "Dronet Suit").  On January 31, 2013, UVEST filed a response to the letter,

agreeing "to indemnify and hold harmless [TIER REIT] for any claims, losses or liabilities

associated with [that Lawsuit] pursuant to the provisions and limitations of Section 4.3 of the

[Dealer Management] Agreement."  Compl. ¶ 45 and Pl.'s App. at 469 [Ex. 6].  Thereafter, TIER

REIT sent indemnification requests to UVEST in connection with the other Lawsuits and

Arbitrations.  By letter dated July 30, 2014, UVEST denied these requests, and retracted its

agreement to indemnify TIER REIT in connection with the Dronet Suit.  *Id.* ¶ 48 and Pl.'s App. at 471-74 (Ex. 7).

*The Instant Lawsuit*

On December 1, 2015, TIER REIT filed this action against UVEST seeking damages in the amount of attorney's fees and expenses incurred to date in defending the Lawsuits and Arbitrations.  On February 2, 2016, TIER REIT filed its First Amended Complaint, which is the live pleading.[4]  TIER REIT alleges, on information and belief, that the conduct by UVEST and Vasquez and/or Fontenot alleged in the Lawsuits and the Arbitrations constituted violations of the SDA.  TIER REIT asserts it is therefore entitled to recover defense costs accrued to date under the provisions of the DMA, incorporated by reference in the SDA, and that UVEST has breached its obligations under the SDA by refusing to pay defense costs as they accrued.  TIER REIT also alleges that UVEST, through the actions of Vasquez and/or Fontenot, breached the Subscription Agreements, as alleged in the Lawsuits and Arbitrations, by failing to provide potential investors with a prospectus and failing to inform them of the liquidity and marketability of the investment.  In addition, TIER REIT alleges that UVEST breached the promise it made in its January 31, 2013 letter (which TIER REIT labels the "Indemnification Letter Agreement") (*see* Compl., Ex. 6), in which it agreed to indemnify and hold harmless TIER REIT for any losses, claims, damages, or liabilities associated with the Dronet Suit.  Finally, TIER REIT alleges, based on principles of promissory estoppel, that UVEST is estopped from denying indemnification because TIER REIT reasonably relied to its detriment on UVEST's promise to

---

[4] On January 14, 2016, UVEST filed a motion to dismiss TIER REIT's original Complaint.  While the motion was pending, TIER REIT filed its First Amended Complaint, after which the Court denied UVEST's then-pending motion to dismiss as moot.  *See* Order [Docket Entry #17].

6

indemnify as set forth in the Indemnification Letter Agreement by delaying its suit against UVEST, and that UVEST foresaw, or reasonably should have foreseen, such reliance.

Based on these allegations, TIER REIT brings the following nine causes of action against UVEST, pleaded in the alternative: (1) Breach of Incorporated Contract – Refusal to Pay Legal Fee and Expense Obligation Accrued Upon Claims Made by Claimants; (2) Third Party Beneficiary of Contract - Refusal to Pay Legal Fee and Expense Obligation Accrued Upon Claims Made by Claimants; (3) Breach of Incorporated Contract – Refusal to Pay Legal Fee and Expense Obligation Accrued Because of UVEST's Conduct Triggering Indemnification; (4) Third Party Beneficiary –  Refusal to Pay Legal Fee and Expense Obligation Accrued Because of UVEST's Conduct Triggering Indemnification; (5) Breach of Contract and Incorporated Contract – Failure to Comply with Obligations of Dealer Terms and Selected Dealer Agreements; (6) Breach of Contract – Breach of Agreement Between UVEST and TIER REIT Contained in the Subscription Agreements; (7) Breach of Warranty – Breach of the Warranties Contained in the Subscription Agreements Entered Into Between UVEST and TIER REIT; (8) Breach of Contract – Breach of the Indemnification Letter Agreement; and (9) Promissory Estoppel – Estoppel Based upon the Indemnification Letter Agreement.  TIER REIT seeks damages in the amount of its attorney's fees and expenses incurred to date defending the Lawsuits and Arbitrations, prejudgment and post-judgment interest, court costs, and attorney's fees incurred in bringing this lawsuit.  *Id.* ¶ 183.

UVEST moves to dismiss each cause of action in the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  UVEST also filed a motion to strike

various affirmative defenses asserted by TIER REIT.  The Court first addresses UVEST's

motion to dismiss.

## II.    UVEST'S RULE 12(B)(6) MOTION TO DISMISS

### A.    Applicable Legal Standards

#### 1.    Federal Rule of Civil Procedure 12(b)(6)

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The "[f]actual

allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"

*Twombly*, 550 U.S. at 555 (internal citations omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Although "the pleading standard Rule 8 announces does not require 'detailed factual

allegations,'" it does require more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555).  Further, "a formulaic recitation of the elements of a cause

of action will not do."  *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss under Rule 12(b)(6), the Court generally cannot look beyond the pleadings.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  If documents are referred to in the plaintiff's complaint and are central to the plaintiff's claims, but not attached, a defendant can attach them to a motion to dismiss and they will be considered.  *Id.*  In deciding a motion to dismiss, the Court may also consider matters of public record without converting the motion into one for summary judgment.  *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") (citation omitted).

### 2.   Contract Interpretation

This is essentially a breach of contract action in which the parties contest the legal implications of the SDA, and its incorporation by reference of the duties to indemnify and pay defense costs set forth in the DMA.  "The primary concern of a court in construing a written contract is to ascertain the true intention of the parties as expressed in the written instrument."  *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 406 (5th Cir. 2006).  "In identifying such intent, 'we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'"  *Italian Cowboy Partner's, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)).  If a contract "is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe it as a matter of law."  *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

"Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* at 394 (citation omitted). "Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Am. Tobacco Co.*, 463 F.3d at 407 (citation omitted). A contract is not ambiguous simply because the parties advance different interpretations. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). "[I]f the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue of the parties' intent." *J.M. Davidson*, 128 S.W.3d at 299. "Only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument." *Italian Cowboy Partner's*, 341 S.W.3d at 333-34 (citation omitted) (internal quotations omitted).

A "contract is not necessarily ambiguous merely because some sections arguably conflict." *NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. App. — Houston [14th Dist.] 2013, no pet.). "[I]n Texas, a specific contractual provision prevails over a general provision." *Evercore Capital Partners II, L.L.C. v. Davis Trust (In re Davis Offshore, L.P.)*, 644 F.3d 259, 266 (5th Cir. 2011) (citation omitted); *see also NuStar Energy*, 402 S.W.3d at 466) ("[T]o the extent of any conflict, specific provisions control over more general ones.").

Finally, a court should avoid when possible "a construction [that] is unreasonable, inequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *see also Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no

pet.) (stating that when interpreting a contract, a court should avoid, if possible, "a construction that is unreasonable, inequitable, or oppressive, or would lead to an absurd result.").

**B.     Analysis**

**1.     Motion to Dismiss Counts One through Five**

Counts One through Five allege that UVEST breached the SDA (and incorporated DMA provisions) by failing to pay, upon accrual, legal fees and expenses incurred by TIER REIT in defending the Lawsuits and Arbitrations.  UVEST moves to dismiss Counts One through Five on several grounds.  First, UVEST argues that Counts One through Five should be dismissed because "in accordance with its terms, the SDA expired before the first underlying lawsuit was filed."  Def.'s Br. 1 [Docket Entry #21].  Second, UVEST argues that Counts One, Three, and Five should be dismissed because TIER REIT is not in privity of contract with UVEST under the SDA that TIER REIT seeks to enforce.  Third, UVEST seeks dismissal of Counts Two and Four, asserting that TIER REIT does not sufficiently allege that it is a third-party beneficiary of the SDA.   Fourth, UVEST argues that Counts One through Four should be dismissed because all claims based on the indemnification terms violate the Texas fair notice doctrine. The Court addresses each argument in turn.

*a.     UVEST's Termination of its Broker-Dealer Registration*

UVEST moves to dismiss Counts One through Five, each of which depends upon TIER REIT's ability to enforce the SDA.  UVEST argues that "the SDA terminated on May 17, 2012[,] when UVEST terminated its broker dealer registration[,]" and the first underlying lawsuit was not filed until after that date.  Def.'s Br. 7 [Docket Entry #21].  UVEST asks the Court to take judicial notice of UVEST's Financial Industry Regulatory Authority ("FINRA")

"BrokerCheck" report, which it has included in an appendix to its motion, and which reflects that

UVEST terminated its registration with FINRA on May 17, 2012. *See* Def.'s App. at 4.[5]

Relying on Section VIII of the SDA, UVEST posits that termination of its broker-dealer

registration "automatically terminated" the SDA, and "any claim based upon the purported

indemnity provision in the SDA is likewise extinguished." Def.'s Br. 8 [Docket Entry #21].

Section VIII of the SDA provides:

> VIII.   License and Association Membership
>
> Dealer's acceptance of this Agreement contains a representation to [TIER REIT]
> and the Dealer Manager that Dealer is a properly registered or licensed broker-
> dealer, duly authorized to sell Shares under Federal and state securities laws and
> regulations in all states where it offers or sells Shares, and that it is a member in
> good standing of the NASD.  This Agreement shall automatically terminate if the
> Dealer ceases to be a member in good standing of such association. . . .

Pl.'s App. at 312, 321.

In response, TIER REIT argues that the indemnity and attorney's fees obligations

incorporated into the SDA did not expire because Section 4.6 of the DMA, incorporated by

reference into the SDA, provided that those obligations survived termination.  Section 4.6 of the

DMA provides that: "The indemnity agreements contained in this Section 4 shall remain

operative and in full force and effect *regardless of . . . (c) any termination of this Agreement*."

*Id.* at 332-33, 343-44 (emphasis added).  TIER REIT further contends that Section VIII of the

SDA, upon which UVEST relies, relates to UVEST's ability to continue marketing shares to the

---

[5] In deciding a motion to dismiss, the Court may consider matters of public record without converting the motion into one for summary judgment. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") (citation omitted).

public, not to its indemnification obligations that may arise in connection with any potential

liability from its prior marketing efforts.

In reply, UVEST urges the Court to interpret Section 4.6 as applying only to the DMA,

since the "survival provision Plaintiff relies upon is in the DMA and applies only to the DMA."

Def.'s Surreply 1 [Docket Entry #32].

As already stated above, the SDA incorporates by reference the indemnity provisions of

the DMA (which include Section 4.6).  *See* Pl.'s App. at 309, 318.  "Under general contract

principles, where a contract expressly refers to and incorporates another instrument in specific

terms which show a clear intent to incorporate that instrument into the contract, both instruments

are to be construed together."  *One Beacon Ins. Co. v. Crowley Maritime Svcs., Inc.*, 648 F.3d

258, 267 (5th Cir. 2011); *see also* 11 Williston on Contracts § 30.25 (4th ed. 1999) ("When a

writing refers to another document, that other document, or the portion to which reference is

made, becomes constructively a part of the writing, and in that respect the two form a single

instrument.  The incorporated matter is to be interpreted as part of the writing.").

The Court must therefore construe the DMA and SDA together as one instrument, and

examine and consider "the entire writing in an effort to harmonize and give effect to all the

provisions of the contract so that none will be rendered meaningless."  *Italian Cowboy*, 341

S.W.3d at 333.  Applying these principles, the Court concludes that, through incorporation of

Section 4.6 of the DMA into the SDA, the parties intended that the indemnification provisions

would survive termination of the relationship between the parties.  Although termination of

UVEST's FINRA registration would terminate its right to market shares under Section VIII of

the SDA, termination of the right to continue to market shares to the public is unrelated to the

obligation to indemnify and pay defense costs for past marketing, and the incorporated DMA terms make this clear by specifically providing that the indemnification obligations survive termination.

The Court also agrees with TIER REIT's additional argument that UVEST's proposed interpretation would lead to absurd and inequitable consequences. As noted by TIER REIT, under UVEST's proposed interpretation:

> (1) UVEST could commit bad acts exposing TIER REIT to liability and, even though it has agreed to indemnify TIER REIT for such actions, UVEST could immediately extinguish those obligations by unilaterally terminating the agreement; or (2) in marketing TIER REIT's securities, UVEST could commit bad acts upon investors, forcing TIER REIT to either forego termination and allow UVEST to continue to market shares or to lose its right of indemnification for UVEST's wrongful conduct. The agreements do not support this interpretation.

Pl.'s Resp. 7-8 [Docket Entry #25]. Under established principles of contract construction, the Court will avoid, when possible, "a construction [that] is unreasonable, inequitable, and oppressive." *Reilly*, 727 S.W.2d at 530; *see also Pavecon*, 159 S.W.3d at 222 (stating that court should avoid "a construction that is unreasonable, inequitable, or oppressive, or would lead to an absurd result."). UVEST's interpretation of the provisions at issue would lead to such a result.

In short, having considered the parties' arguments and the plain language of the DMA and SDA, and accepting all well-pleaded facts in the Complaint as true, the Court determines that UVEST's interpretation, urged in support of its motion to dismiss Counts One through Five, does not comport with controlling rules governing contract interpretation and ignores the doctrine of incorporation by reference. For these reasons, the Court **denies** UVEST's motion to dismiss Counts One through Five.

14

b.      *Privity of Contract*

UVEST moves to dismiss Counts One, Three, and Five, which allege breach of the SDA arising from UVEST's refusal to pay legal fees and expense obligations incurred by TIER REIT in connection with its defense of the Lawsuits and Arbitrations.  In support of dismissal, UVEST argues that TIER REIT is not a party to the SDA and, therefore, cannot enforce its terms under Texas law.  UVEST also argues that the same result holds true under Federal Rule of Civil Procedure 17, which mandates that "[e]very action shall be prosecuted in the name of the real party in interest."  Def.'s Br. 10 (quoting Fed. R. Civ. P. 17(a)).  In response, TIER REIT contends that, even though it is not a signatory to the SDA, privity of contract is established by the SDA's incorporation of the indemnification obligations in the DMA.  TIER REIT also asserts that "UVEST's Rule 17 argument is simply a repetition of its argument that TIER REIT lacks privity since it depends upon the assumption that TIER REIT is not the real party in interest."  Pl.'s Resp. 10 [Docket Entry #25].  The Court agrees with TIER REIT's positions.

It is well settled that, under Texas law, "[p]rivity of contract [is] a necessary predicate to suit on a contract, . . ."  *Interstate Contr. Corp. v. City of Dallas,* 135 S.W.3d 605, 607 (Tex. 2004).  In Texas, "in order to maintain an action to recover for breach of contract, privity must exist between the party damaged and the party sought to be held liable."  *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 739-40 (N.D. Tex. 2014) (citation omitted).  As aptly stated by a district court in this circuit, "it is quite a challenge to find a definition of 'privity' in the contract context.  However, based on how courts have employed the term, the best proxy for privity is simply whether the individual is a *party* to the contract - *i.e.,* whether he

is obligated thereby." *McIntosh v. Wiley*, 2006 WL 3691109, at *2 (S.D. Tex. Dec. 11, 2006) (citations omitted).

UVEST, the "Dealer" under the terms of the SDA and DMA, is a party to the SDA, and the SDA specifically incorporates by reference all "terms of the Dealer Manager Agreement relating to the Dealer . . . as if set forth verbatim, . . ." *See* Pl.'s App. at 309, 318.  The SDA provides that: "By your acceptance of this Agreement, you [the Dealer] . . . will be entitled and subject to the indemnification provisions contained in the [DMA], including the provisions of the [DMA] wherein the Dealers severally agree to indemnify and hold harmless [TIER REIT], . . ." *See id.*  Because of the incorporation of the DMA into the SDA, the obligations "relating to the Dealer," referred to in the DMA, as well as the obligations relating to the indemnification provisions in the DMA, each are obligations of UVEST to both the Dealer Manager *and* to TIER REIT.  Given that UVEST has assumed obligations to TIER REIT by way of incorporation by reference of the DMA's indemnification obligations into the SDA, the Court concludes that Plaintiff has sufficiently alleged it is in privity with UVEST such that it may sue UVEST for breach of the SDA.

For these same reasons, the Court rejects UVEST's argument that TIER REIT is not the real party in interest under Federal Rule of Civil Procedure 17(a).  As alleged by TIER REIT, the incorporation by UVEST of the obligations of the DMA into the SDA renders TIER REIT the party to whom UVEST owes those obligations.  UVEST agreed to the indemnification provisions of the DMA when it entered into the SDA, and TIER REIT is permitted to enforce those indemnification provisions against UVEST.  TIER REIT has sufficiently alleged that it holds the right to be enforced and is the real party in interest.

For these reasons, the Court **denies** UVEST's motion to dismiss Counts One, Three, and Five for lack of privity or under Federal Rule of Civil Procedure 17(a).

    *c.*  *Third-Party Beneficiary Status*

UVEST moves to dismiss Counts Two and Four of the Complaint, which TIER REIT pleads in the alternative to Counts One and Three, and which allege breach of the SDA arising from UVEST's refusal to pay legal fees and expense obligations incurred by TIER REIT in connection with its defense of the Lawsuits and Arbitrations. Unlike Counts One and Three, however, TIER REIT pleads these claims as a purported third-party beneficiary of the SDA.

UVEST moves to dismiss Counts Two and Four because TIER REIT "does not allege third party status sufficient to overcome Texas law's presumption against finding that a contract confers rights to a third party." Def.'s Br. 11 [Docket Entry #21] (citing *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)). In response, TIER REIT argues it is a "creditor beneficiary under the SDA given [that] the DMA signed by TIER specifically requires its Dealer Manager to require Dealers like UVEST to sign the SDA, which is an exhibit to the DMA." Pl.'s Resp. 11 [Docket Entry #25].

 Texas courts maintain a presumption against third-party beneficiary contracts. *See Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1995). "A third party may enforce a contract it did not sign when the parties to the contract entered the agreement with the clear and express intention of directly benefitting the third party." *Tawes*, 340 S.W.3d at 424 (citing *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). "A court will not create a third-party beneficiary contract by implication." *MCI Telecomms.*, 995 S.W.2d 647 at 651. "When the contract confers only an indirect, incidental benefit, the third

party cannot enforce the contract." *Tawes*, 340 S.W.3d at 424.  To establish it is the intended

beneficiary of a contract, a third party must show it is either a "donee" or a "creditor beneficiary"

of the contract.  *MCI Telecomms.*, 995 S.W.2d at 651.

TIER REIT does not allege it is a "donee" beneficiary.  Thus, the Court must determine

whether, accepting all well-pleaded allegations in the Complaint as true, and viewing the

allegations in the light most favorable to TIER REIT, the Complaint states a plausible claim that

TIER REIT is a "creditor beneficiary" of the SDA.  "[A] party is a creditor beneficiary if the

performance promised in the contract is rendered in satisfaction of a legal duty owed to that

party." *J.P. Morgan Chase Bank, N.A. v. Texas Contract Carpet, Inc.*, 302 S.W.3d 515, 530

(Tex. 2009).  In the Complaint, TIER REIT alleges that "UVEST and the Dealer Manager

entered into the Selected Dealer Agreements directly for the benefit of TIER REIT."  Compl. ¶

75.  In addition, TIER REIT has attached the SDA and DMA to the Complaint, and alleges that

under the terms of these agreements, the DMA signed by TIER REIT requires that the Dealer

Manager, in addition to executing the DMA, enter into a SDA with the Dealers, like UVEST,

without which TIER REIT shares could never be sold to the public.  *See generally id.* ¶¶ 11, 13

and Exs. 1A, 1B, 2A, 2B thereto.  Based on these allegations, the Court concludes that TIER

REIT has sufficiently alleged that it is a third-party beneficiary to the SDA.[6]

For these reasons, the Court **denies** UVEST's motion to dismiss Counts Two and Four.

---

[6] Many of UVEST's arguments seeking dismissal of Counts Two and Four, including that the parties did not intend to confer third-party beneficiary status on TIER REIT, and that the DMA and SDA contradict TIER REIT's allegations and legal arguments, are better addressed at the summary judgment stage when the Court may consider parol evidence and re-visit the terms of the agreements in light of further evidence developed during discovery.  At this early stage, the Court is limited to the pleadings and declines to weigh evidence.

d.      *Fair Notice Requirements*

UVEST moves to dismiss Counts One through Four on the grounds that "the indemnity agreements do not satisfy Texas fair notice requirements." Def.'s Br. 13 [Docket Entry #21]. In response, TIER REIT contends that fair notice requirements do not apply because the conduct triggering indemnification on the applicable claims was UVEST's own alleged misrepresentations and non-disclosures to third-party investors.

In Texas, a contract provision releasing a party from all liability claims caused by its own future negligence must comply with the fair notice requirements of the "express negligence doctrine" and "conspicuousness." *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex.1993). However, as TIER REIT points out in opposition to the motion to dismiss, it is seeking indemnity and defense costs only for losses that resulted from UVEST's misrepresentations and failures to disclose. The fair notice requirements apply only when "one party exculpates itself from its own future negligence." *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 387 (Tex.1997); *see also DDD Energy, Inc. v. Veritas DGC Land, Inc.,* 60 S.W.3d 880, 885 (Tex. App. 2001, no pet.) (holding that fair notice does not apply "where an indemnitee is seeking indemnification from claims not based on the negligence of the indemnitee."). Based on the pleadings, the Court concludes that TIER REIT has suffiently alleged that the fair notice requirements do not apply.[7]

---

[7] On a motion to dismiss, the Court is limited to the pleadings, which include the complaint and documents attached to it. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Following discovery, UVEST may reurge this argument in a motion for summary judgment in the event the evidence reveals that TIER REIT is, in fact, seeking indemnification for the consequences of its own negligence, and not only UVEST's.

For these reasons, the Court **denies** UVEST's motion to dismiss Counts One through Four based on the fair notice requirements.

### 2.   Motion to Dismiss Counts Five through Seven

UVEST moves to dismiss Counts Five through Seven as time-barred under the four-year statute of limitations applicable to breach of contract claims.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051.[8]  UVEST contends that because its "alleged misconduct occurred between 2006 and 2008, at best the statute of limitations expired in 2012.  Yet the Complaint was not filed until 2015, well outside of the limitations period."  Def.'s Br. 26 [Docket Entry #21].[9]  In opposition, TIER REIT argues that the applicable limitations period for its claims alleged in Counts Five through Seven has not yet begun to run under Tolling Agreements it entered into with UVEST on May 15, 2015.

An agreement to toll the statute of limitations must be specific and for a reasonable time. *Duncan v. Lisenby*, 912 S.W.2d 857, 858-59 (Tex. App.—Houston [14th Dist.], 1995, no writ. Here, the Tolling Agreements provide in relevant part:

> 5.    The parties agree that the statute of limitations on the Covered Claims shall not begin to run until after there is a final decision by the arbitrator in the Arbitration and the other Party (TIER REIT or UVEST) has denied any demand based upon that final decision; provided that nothing in this Agreement shall preclude either party from commencing an action on a Covered Claim before there is such a decision to the extent such action is

---

[8] Counts Five through Seven are as follows: Breach of Contract and Incorporated Contract – Failure to Comply with Obligations of Dealer Terms and Selected Dealer Agreements (Count Five); Breach of Contract – Breach of Agreement Between UVEST and TIER REIT Contained in the Subscription Agreements (Count Six); and Breach of Warranty – Breach of the Warranties Contained in the Subscription Agreements Entered Into Between UVEST and TIER REIT (Count Seven).

[9] TIER REIT does not dispute that Counts Five through Seven are based on UVEST's alleged misconduct from 2006-08.

ripe, and nothing in this Agreement shall be construed as an agreement
that any such Covered Claims are not yet ripe.

Compl. ¶ 51 and Pl.'s App. at 475-504 (Exs. 8A, 8B, 8C, 8D, and 8E) ("Tolling Agreements").

Paragraph One of the Tolling Agreements defines "Covered Claims" as:

all legal or equitable claims, defenses, actions, causes of action, demands, rights,
damages, expenses and compensation whatsoever which could be asserted by
either of the Parties against the other which arise in any way out of the Lawsuit or
the Arbitration or the conduct alleged in the Lawsuit or Arbitration[.]

Pl.'s App. at Exs. 8A-8E, ¶ 1.  The Tolling Agreements also contain the following provision:

6.      Nothing in this Agreement shall be taken as an admission by either of the
Parties as [to] any liability in the Lawsuit or the Arbitration or to the
applicability, running, expiration or non-expiration of any statute of
limitations or similar rule of law or equity prior to the effective date of this
Agreement.

*Id.*, Exs. 8A-8E, ¶ 6 (emphasis added).

TIER REIT argues that the definition of "Covered Claims" shows the parties intended to

toll the limitations period with regard to "not only the actions of UVEST in failing to indemnify

TIER and pay its fees but also the consequential damages caused by UVEST's original

violations against the investors."  Pl.'s Resp. 26 [Docket Entry #25].  TIER REIT further asserts:

"Had the parties intended only to include indemnification and defense claims in the [Tolling

Agreements], the definition of Covered Claims would have been limited to claims arising out of

the Lawsuits and Arbitrations."  *Id.*  The Court agrees.

Giving the words in the Tolling Agreements their "plain, ordinary, and generally

accepted meanings[,]" *see Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005),

it is clear that the parties agreed to toll the statute of limitations as to any claims arising out of

UVEST's conduct that caused the Lawsuits and Arbitrations to be brought, such as those claims

asserted in Counts Five through Seven of TIER REIT's Complaint.  The Court further concludes that the definition of "Covered Claims," is specific enough to satisfy the requirement that a waiver of a statute of limitations defense must be specific.  *See Duncan*, 912 S.W.2d at 858-59.

That the statute of limitations had already expired prior to the date the Tolling Agreements were signed is inconsequential to the Court's analysis.  *See Starcrest Trust v. Berry*, 926 S.W.2d 343, 351 (Tex. App.—Austin 1996, no writ (parties "may agree to waive the statute of limitations either before or after the expiration of the prescribed time limit."); *see also Martin v. Texas Women's Hosp., Inc.*, 930 S.W.2d 717, 721 (Tex. App.—Houston [1st Dist.], 1996, no writ) (finding that "when a plaintiff fails to sue within the limitations period, the claim still exists, but unless the statute of limitations affirmative defense is waived, it can no longer be brought against a defendant.").

UVEST, in the alternative, moves to dismiss Counts Five through Seven on the basis that TIER REIT fails to sufficiently state a claim for breach of contract.  *See* Def.'s Br. 24-24. Accepting all well-pleaded facts in the Complaint as true, and viewing them in the light most favorable to TIER REIT, the Court determines that TIER REIT's allegations are sufficient to allege a plausible breach of contract claim against UVEST in Counts Five through Seven.  A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *See generally Twombly*, 550 U.S. at 570 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  TIER REIT's allegations meet these

requirements.  Moreover, as stated by TIER REIT, "UVEST admits it understands the allegations against it when it describes the Complaint as contending 'that allegations against UVEST in the Lawsuits claiming misrepresentation about [TIER REIT] shares, investors' suitability to purchase the shares, and failure to provide investors a prospectus establish breaches of the SDA, DMA, and the Subscription Agreements."  Pl.'s Resp. 23-24 (quoting Def.'s Br. 23).

For these reasons, the Court **denies** UVEST's motion to dismiss Counts Five through Seven

### 3.      Motion to Dismiss Counts Eight and Nine

TIER REIT alleges it sent UVEST a request for indemnification in the Dronet Suit on September 11, 2012.  Compl. ¶ 44.  On January 31, 2013, UVEST filed a response to the letter, agreeing "to indemnify and hold harmless [TIER REIT] for any claims, losses or liabilities associated with [that Lawsuit] pursuant to the provisions and limitations of Section 4.3 of the [Dealer Management] Agreement."  *Id.* ¶ 45 and Pl.'s App. at 469 [Ex. 6].  Based on these allegations, in Count Eight, TIER REIT alleges that UVEST's letter is a contract, and that UVEST breached the contract by failing to fulfill its promise.  In Count Nine, TIER REIT argues that, based on principles of promissory estoppel, UVEST is estopped from denying indemnification because TIER REIT reasonably relied to its detriment on UVEST's promise to indemnify by delaying its suit against UVEST, and that UVEST foresaw, or reasonably should have foreseen, such reliance.

UVEST moves to dismiss Counts Eight and Nine, arguing, among other things, that a "plain reading of the Letter shows that it never mentions defense costs, or the indemnity section that references defense costs.  The Letter merely acknowledges a potential indemnity 'pursuant

to Section 4.3' of the DMA."  Def.'s Resp. 28 [Docket Entry #21].  UVEST further notes that the

Letter "is silent with respect to costs under § 4.5 [of the DMA].  Accordingly, the Letter cannot

support a contract or estoppel-based theory regarding defense costs, which are Plaintiff's only

alleged damages, because those were never promised."  *Id.*

    In this lawsuit, TIER REIT seeks damages in the amount of its attorney's fees and

expenses incurred to date defending the Lawsuits and Arbitrations.  *See* Compl.

¶ 183.  As UVEST correctly argues, Section 4.5 of the DMA, and not Section 4.3, provides for

indemnification for defense costs.  The Indemnification Letter Agreement only makes a promise

to indemnify TIER REIT in relation to the Dronet Suit pursuant to Section 4.3 of the DMA, not

for costs under Section 4.5.  Accordingly, the Court concludes that TIER REIT has failed to state

a claim for breach of the alleged promise made by UVEST in the October 31, 2013 letter.

    The Court also concludes that TIER REIT's promissory estoppel claim set forth in Count

Nine should be dismissed.  Under Texas law, "[t]he elements of a promissory estoppel claim are:

(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantive reliance

by the promisee to his detriment."  *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 378-79

(Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *English v. Fischer*, 660 S.W.2d 521, 524

(Tex. 1983)).  As UVEST argues, TIER REIT "cannot establish that it reasonably relied on the

Letter as a promise to pay defense costs [under Section 4.5 of the DMA] because the Letter

never referenced or promised to pay defense costs."  Def.'s Br. 29 [Docket Entry #21].

    For these reasons, the Court **grants** UVEST's motion to dismiss Counts Eight and Nine

for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Although Plaintiff

may attempt to revive its Counts Eight and Nine in an amended complaint, the Court is highly

skeptical that Plaintiff can plead a proper breach of contract or promissory estoppel theory arising out of the Indemnification Letter Agreement.

## III.     UVEST'S MOTION TO STRIKE

UVEST has filed a motion to strike TIER REIT's "Affirmative Defenses" set forth in paragraphs 176 through 181 of the Complaint.  In support, UVEST makes numerous arguments, including that under the Federal Rules of Civil Procedure, affirmative defenses are "part of the answer, not the complaint."  Mot. to Strike 1 [Docket Entry #19].  In response, Plaintiff cites to state rules of civil procedure, arguing that "Texas substantive law allows a plaintiff to assert matters constituting a defense or avoidance to avoid affirmative defenses asserted by a defendant."  Pl.'s Resp. 5 [Docket Entry #22].

"Federal courts apply state substantive law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings."  *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 394 (5th Cir. 2003); *see also Hanna v. Plumer*, 380 U.S. 460, 465-67 (1965).  Pursuant to Federal Rule of Civil Procedure 8(c)(1), affirmative defenses are asserted when "responding to a pleading."  Rule 7(a) defines a pleading as including a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and, if the court orders one, a reply to an answer.  *See* Fed. R. Civ. P. 7(a).  UVEST has yet to file an answer, or any affirmative defenses or counterclaims, but has elected instead to file a motion to dismiss.  Thus, TIER REIT's "Affirmative Defenses" are not asserted in response to any live pleading, but are merely anticipatory to what it believes UVEST might plead in the future.  As UVEST correctly argues, the proper avenue for the legal arguments contained in TIER REIT's "Affirmative Defenses"

filed in response to UVEST's initial motion to dismiss "is, of course, Plaintiff's response brief in opposition to the motion—not in Plaintiff's pleadings."  Reply 4 [Docket Entry #26].  Applying federal procedural law, the Court concludes that TIER REIT's "Affirmative Defenses" are improperly asserted in the Complaint.  Accordingly, the Court **grants** UVEST's motion to strike paragraphs 176 through 181 of the Complaint.

## IV.    CONCLUSION

For the reasons stated above,  Defendant's Motion to Dismiss [Docket Entry #21] is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the Motion to Dismiss is **GRANTED** as to Count Eight (Breach of Contract – Breach of the Indemnification Letter Agreement), and Count Nine (Promissory Estoppel – Estoppel Based upon the Indemnification Letter Agreement), which are hereby **dismissed without prejudice** and with leave to replead.  In all other respects, Defendant's Motion to Dismiss is **DENIED**.  Defendant's Motion to Strike [Docket Entry #19] is **GRANTED**.

The deadline to file an amended complaint is **August 25, 2016**.  Failure to amend by that time will result in Counts Eight and Nine being dismissed with prejudice for the reasons stated herein.

**SO ORDERED.**

**July 28, 2016.**

_(signature)_

**BARBARA M. G. LYNN**
**CHIEF JUDGE**

26